IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
SERAIAH BEN-YISRAEL,            )
                                )
              Plaintiff,         )
                                )
       v.                       )   CIVIL ACTION NO. 02-CV-4059
                                )
JO ANNE B. BARNHART             )
Commissioner of                 )
Social Security,                )
                                )
              Defendant.        )
```

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
AND IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STANDARD OF REVIEW

Plaintiff, Seraiah Ben-Yisrael, brought this action under
42 U.S.C. § 405(g), for review of the decision of the
Commissioner of Social Security denying his request for waiver
of recovery of an overpayment of disability insurance benefits
(DIB) under title II of the Social Security Act (Act).
42 U.S.C. § 401-433.

This Court's review of the Commissioner's decision is not
de novo, but rather is limited to determining whether there is
substantial evidence in the record to support the
Commissioner's decision.  42 U.S.C. § 405(g).  The
Commissioner's finding regarding any fact is conclusive if it
is supported by substantial evidence.  Richardson v. Perales,
402 U.S. 389, 390 (1971); Monsour Medical Ctr. v. Heckler,
806 F.2d 1185, 1190 (3d Cir. 1986).  Substantial evidence is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Perales, 402 U.S. at 402.
Substantial evidence

is defined as less than a preponderance of evidence and more than a mere scintilla. Id. The question before this Court, under the substantial evidence standard of review, is whether the evidence so unequivocally requires a conclusion opposite to that reached by the Commissioner that it would justify taking the question from the jury, were it before the jury, and directing a verdict for the Plaintiff. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966); Monsour, 806 F.2d at 1190. Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of this Court, to make findings of fact and to resolve conflicts in the evidence. Monsour, 806 F.2d at 1190-91.

## ISSUE

Whether substantial evidence supports the Commissioner's determination that Plaintiff was not without fault in receiving and accepting an overpayment of disability benefits and, therefore, was not entitled to waiver of recovery of such overpayment of benefits.

## STATEMENT OF THE CASE

Plaintiff filed an initial application for DIB with an onset date of July 19, 1976, and was found entitled to benefits effective January 1977. In June 1978, however, the Agency determined that his benefits ceased because he had worked for at least nine months prior to March 1978. [1]

---

[1] The regulations provide for a trial work period during which an individual may test his ability to work and still be

Following an appeal of this decision, the Agency denied his request for reconsideration on March 4, 1980.

Plaintiff filed a second application for DIB on March 12, 1984, which was denied initially, upon reconsideration, and in a hearing decision dated November 28, 1984.

Plaintiff filed a third application for DIB on March 18, 1987, alleging disability as of March 15, 1985, for which he was awarded benefits effective September 1985. However, on March 10, 1989, the Agency determined that his mental impairment had improved such that he no longer was disabled as of March 1989, and that his benefits would cease (Tr. 81-83). Plaintiff filed a request for reconsideration of the cessation of his benefits on March 17, 1989 (Tr. 84). On December 4, 1989, the Agency notified him that a determination would be made that his ability to engage in substantial gainful activity was demonstrated in January 1989, and that his benefits would cease in March 1989 (Tr. 86-87).

The Agency reinstated Plaintiff's benefits in January 1990 because he had stopped working (Tr. 94).

On October 7, 1996, the Agency determined that Plaintiff no longer was entitled to benefits as of February 1996, because he was engaging in substantial gainful activity

---

considered disabled. During this period, he may work in as many as 9 months before the Agency will consider such work as showing that his disability has ended. 20 C.F.R. § 404.1592 (2002).

(Tr. 120-21).  Plaintiff filed a request for reconsideration, following which the Agency, on April 3, 1998, issued a Notice of Planned Action revising its prior determination (Tr. 191-94).  In its notice, the Agency explained that Plaintiff had earned over $500 monthly in January 1996 and was beyond the thirty-sixth month following the completion of his trial work period, [2] and thus his disability benefits should have ended in December 1995 (Tr. 193).

On December 29, 1998, Plaintiff filed a Request for Waiver of Overpayment Recovery, stating that he was not at fault in causing the overpayment and was unable to repay it (Tr. 243-50).

On October 26, 2000, the Agency issued a Personal Conference Notice finding that the decision to deny Plaintiff's request for waiver of recovery of the overpayment was correct (Tr. 264).  The Agency explained that Plaintiff had been overpaid because he had collected benefits from January 1996 through September 1998 while he also was working (Tr. 265).

Plaintiff filed an appeal of the Personal Conference Decision by requesting a hearing before an administrative law judge (ALJ).  On January 23, 2002, the ALJ held a hearing at which Plaintiff, who was represented by counsel, testified

---

[2] The regulations provide for a thirty-six month reentitlement period, after the nine-month trial work period, during which an individual may continue to test his ability to work.  20 C.F.R. § 404.1592a (2002).

(Tr. 37-74).  Then, on January 25, 2002, the ALJ issued a decision finding that Plaintiff was at fault in causing the overpayment and that waiver of recovery of the overpayment could not be applied (Tr. 15-24).

After considering Plaintiff's objections to the ALJ's decision, the Appeals Council found no basis on which to amend that decision and denied his request for review (Tr. 8-9). Plaintiff then filed a complaint in this court objecting to the final decision of the Commissioner.

STATEMENT OF FACTS

Plaintiff filed his current application for DIB on March 18, 1987, alleging disability as of March 15, 1985.  He was awarded benefits effective September 1985.

In January 1989, he returned to work as a carrier for the United States Cargo Service, where he earned on average $489 per month (Tr. 86).  On March 10, 1989, the Agency informed him that it had reviewed his case and had determined, effective March 1989, that he no longer was disabled because his mental impairment had improved with treatment and medication (Tr. 81-83).

On March 17, 1989, Plaintiff filed a request for reconsideration of the Agency's determination that his disability benefits would cease (Tr. 84).  On December 4, 1989, upon reconsideration, the Agency issued a determination finding that he had engaged in substantial gainful activity in

January 1989 and that his benefits would cease in March 1989 (Tr. 86-87).

On April 16, 1990, the Agency informed Plaintiff by letter that he had been overpaid in the amount of $4,440.90 for May 1989 through December 1989 because his work activity constituted substantial gainful activity (Tr. 88-89). Plaintiff filed a request for reconsideration on July 5, 1990, appealing the Agency's overpayment determination (Tr. 91).  In his appeal, he asserted that he had spent most of his earnings on an herb doctor and a massage clinic and that it was due to such treatment that he had been able to work (Tr. 91).

On October 23, 1990, the Agency issued a Notice of Reconsideration in which it affirmed its previous determination (Tr. 93-94).  The Agency explained that Plaintiff had returned to work after his onset date of March 15, 1985, and had worked in at least nine months prior to February 1989, which constituted his trial work period (Tr. 93-94).  His work at that time, during which he earned an average of over $300 per month, demonstrated his ability to engage in substantial gainful activity despite any impairment (Tr. 93).  However, because benefits would be paid for two additional months after the month in which his disability ended, his benefits would end in April 1989 (Tr. 93).  The Agency further explained that based on the 1980 amendments to the Act, Plaintiff was entitled to an extended period of eligibility from October 1988 through September 1991, during

which his benefits would continue for those months in which he
did not earn in excess of $300 or more ($500 after 1989), and
that his benefits would continue without his having to file a
new application should he stop working within this thirty-six
month period (Tr. 93).

August 15, 1996, Plaintiff filed a Request For Waiver of
Overpayment Recovery for the period of May 1989 through
December 1989 (Tr. 98-105).  In his request, Plaintiff
asserted that he had informed the Agency in person that he had
returned to work (Tr. 99).  He also asserted that on a
previous occasion, he had received a check to which he was not
entitled and had returned it to the Agency (Tr. 99).

On October 7, 1996, the Agency issued a Notice of Planned
Action informing Plaintiff that he no longer was entitled to
benefits as of February 1996 because he was engaging in
substantial gainful activity, and that a determination would
be made to terminate his benefits (Tr. 120-21).

On January 14, 1997, the Agency issued a Notice of
Disability Cessation informing Plaintiff that as of
February 1996, he no longer was qualified for disability
benefits because he had engaged in substantial gainful
activity despite his impairments (Tr. 133).  The Agency
explained that he had completed a nine-month trial work period
in September 1988, and became able to perform substantial
gainful activity in February 1996 after the completion of his
thirty-six month extended period of eligibility (Tr. 132).

7

On April 3, 1998, the Agency issued a Notice of Planned
Action responding to Plaintiff's request for reconsideration
and revising its prior determination (Tr. 191-94).  In a
review of his work history, the Agency noted that Plaintiff
had a trial work period from January 1988 through September
1988, and a thirty-six month extended period of eligibility
beginning in October 1988 (Tr. 192-93).  In addition, he had
been eligible for benefits beginning January 1990 through
December 1995 because he had not engaged in substantial
gainful activity for this time period (Tr. 193).  However, in
January 1996, he earned over $500 monthly and was beyond the
thirty-sixth month following the completion of his trial work
period, and thus his disability benefits should have ended in
December 1995 (Tr. 193).

Plaintiff filed a Request for Waiver of Overpayment
Recovery on December 29, 1998, stating that he was not at
fault in causing the overpayment and was unable to repay it
(Tr. 243-50).  In his request, he asserted that he had
informed the Agency in person that he was working (Tr. 244),
and that he was employed by the School District of
Philadelphia where he earned $486 net pay per month (Tr. 247).

Following a personal conference with a District Manager,
the Agency issued a Personal Conference Notice on October 26,
2000, finding that the decision to deny Plaintiff's request
for waiver of recovery of the overpayment was correct
(Tr. 264).  In its decision, the Agency explained that

8

Plaintiff had been overpaid due to collecting benefits while
working from January 1996 through September 1998 (Tr. 265).
Plaintiff's current overpayment of $23,844.10, in addition to
his prior overpayment of $3930.00, equaled a total overpayment
of $27,774.10 (Tr. 265). However, he should have received no
benefits for this time period because his monthly income
exceeded his expenses by $867.00 (Tr. 265). The Agency
concluded that Plaintiff had been overpaid in the past under
similar circumstance and, based on his benefit history, it was
reasonable to assume that reporting responsibilities had been
explained to him (Tr. 264). Therefore, because there was no
record that the checks had been returned, his request for
waiver of recovery of the overpayment was denied (Tr. 264).

ARGUMENT

I.   <u>Introduction</u>

The Social Security Act provides that there shall be no
adjustment of recovery in any case where an overpayment under
title II has been made to an individual who is without fault
if adjustment or recovery would either defeat the purpose of
title II of the Act or be against equity and good conscience.
42 U.S.C. § 404(b). [3]

---

[3] The regulations implementing the Act set forth the
administrative process governing a request for waiver of an
overpayment recovery. 20 C.F.R. § 404.506 (2002). The
regulations provide that when a request for waiver cannot be
approved after an initial review, the individual is afforded
an opportunity for a file review and a personal conference.
20 C.F.R. § 404.506(c)-(f). Following the personal
conference, the Agency issues a written decision to the

In the present case, the ALJ issued a decision finding
that Plaintiff was not entitled to waiver of recovery of the
overpayment because he was at fault in causing the overpayment
(Tr. 24, Finding No. 2).  In his determination, the ALJ
considered all of the evidence in the administrative record,
as well as Plaintiff's testimony at the hearing and his
statements to Agency representatives during the processing of
his request.  The evidence substantially supports the ALJ's
determination that Plaintiff was not without fault in causing
the overpayment and, therefore, was not entitled to waiver of
recovery of the overpayment.

II.  Substantial Evidence Supports the Commissioner's Finding
     that Plaintiff was "Not Without Fault" in Causing the
     Overpayment of Disability Insurance Benefits.

The Commissioner, who is a member of the Board of
Trustees of the Social Security Trust Funds, is required by
Congress to recover overpayments from Social Security
beneficiaries who are not without fault in the causing
overpayments, in order to preserve the integrity of the trust
funds.  See 42 U.S.C. §§ 401(c), 404(a).  The Act provides for
the waiver of overpayments as follows:

    In any case in which more than the correct amount of
    payment has been made, there shall be no adjustment of

_____

individual specifying the findings of fact and conclusions in
support of the decision to approve or deny the waiver, and
advising of the individual's right to appeal the decision.  20
C.F.R. § 404.506(g).  After an initial determination denying a
waiver of recovery of an overpayment, an individual may
request a hearing before an administrative law judge.  20
C.F.R. § 404.930(a)(6) (2002).

payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience.

42 U.S.C. § 404(b).

In order to obtain a waiver of recovery of the overpayment, therefore, Plaintiff must show (1) that he was without fault, and (2) that recovery of the overpayment would defeat the purpose of title II or would be against equity and good conscience. See 42 U.S.C. § 404(b). However, if the Commissioner determines that a claimant is at fault, she need not make a determination regarding the second prong of the analysis. Garnett v. Sullivan, 905 F.2d 778, 782 (4th Cir. 1990) (upholding Commissioner's determination that beneficiary was at fault in causing the overpayment and, therefore, there was no need to reach issue whether waiver of recovery was inequitable or would cause hardship); Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990) (upholding ALJ's finding of fault without reaching second prong of the statute).

In the present case, the ALJ determined that Plaintiff was at fault in causing the overpayment of disability benefits (Tr. 24, Finding No. 2). The regulations implementing the Act define "fault" as follows:

"Fault" as used in "without fault" . . . applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault . . . whether an individual is at fault

11

. . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:

(a)  An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b)  Failure to furnish information which he knew or should have known to be material; or

(c)  With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (2002).

A claimant has the burden of proving that he was without fault in causing an overpayment.  See Anderson, 914 F.2d at 1122; Bray v. Bowen, 854 F.2d 685, 687 (5th Cir. 1988); Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982).  In the present case, therefore, Plaintiff bore the burden of showing that he was without fault in causing the overpayment of his DIB benefits.

The Commissioner determined that Plaintiff was at fault in causing the overpayment of disability benefits and, therefore, waiver of recovery of the overpayment was not warranted (Tr. 24, Findings Nos. 2-3).  The overpayment of disability benefits in this case concerns an "entitlement overpayment."  An entitlement overpayment results when a benefit payment under title II of the Act is made to an individual who fails to meet one or more requirements for entitlement to such payment.  20 C.F.R. § 404.510a (2002). Plaintiff's overpayment here resulted from his failure to

12

timely report his return to work in September 1995 and his failure to return his payment of benefits to the Agency.

In evaluating his request for waiver of overpayment recovery, the ALJ determined that Plaintiff was at fault because he should have known that working as an employee of the School District of Philadelphia beginning in January 1996 and receipt of DIB would result in his being overpaid (Tr. 21). As indicated above, fault may be established when an overpaid individual accepts a payment which he knew or could have been expected to know was incorrect. See 20 C.F.R. § 404.507(c). In determining that Plaintiff was at fault, the ALJ considered evidence that Plaintiff was notified on numerous occasions of his reporting requirements and that a return to work beyond the trial work period and extended period of eligibility would result in his being overpaid (Tr. 22). For example, Plaintiff had a long history of being entitled to disability benefits, since as early as January 1977, and had been given numerous verbal and written instructions concerning his reporting requirements and how employment would affect his disability benefits. In fact, his disability had ceased in 1978 because his nine-month trial work period had ended and he had continued to work at substantial gainful activity levels. In addition, he had complied with the reporting responsibilities in 1988 by timely notifying the Agency of his work and earnings. Given this entitlement history, the ALJ found that a reasonable person

13

would have known that continued receipt of benefit checks was
in error and would have returned them.

In determining that Plaintiff should have known that
returning to work would result in an overpayment, the ALJ also
considered evidence that after being re-entitled to benefits
in 1985, Plaintiff received a Notice of Reconsideration that
fully explained the Agency's policy regarding monthly earnings
during periods of entitlement.  In this notice dated
October 23, 1990, the Agency explained that Plaintiff's trial
work period had ended in February 1989 and that payments could
be made without the filing of a new application if he stopped
working during the thirty-six month extended period of
eligibility (Tr. 93-94).  The Agency also informed him of the
earnings limits of $300 per month prior to 1990 and $500 per
month beginning in 1990 (Tr. 93-94).  This suggests that
Plaintiff had knowledge of the precise amount that he could
earn and remain entitled to benefits.  Moreover, the Agency
determined that Plaintiff was not entitled to benefits from
May 1989 through December 1989 because his monthly earnings
had exceeded the $300 limit, but that he was due payment
beginning January 1990 because he had stopped working
(Tr. 93-94).  The ALJ concluded that based on this explanation
of Agency policy, Plaintiff should have been aware that if he
returned to work in the future and earned above the
substantial gainful activity earnings limit, such action would
cause him to be overpaid (Tr. 22).

14

Next, the ALJ considered that in his Request for Waiver of Overpayment Recovery completed on August 15, 1996 (Tr. 98-105), Plaintiff reported that he had returned to work in September of 1995 and submitted pay stubs of his earnings as of that date (Tr. 108-19). The ALJ noted that this was the first time in the record that Plaintiff had reported these earnings and concluded that he had failed to timely report this work which had begun almost one year earlier (Tr. 22).

The ALJ further considered a report of contact dated October 1, 1996, showing that Plaintiff had reported that his earnings exceeded the substantial gainful activity level effective February 1996, and that he continued to work and hoped to be appointed to a full-time position with the Philadelphia School Board (Tr. 106). The ALJ explained that because the Agency's October 23, 1990, Notice of Reconsideration had provided Plaintiff with a detailed explanation that future earnings would cause him to be overpaid, even though he had reported his return to work, he should have known that his continued acceptance of checks in 1996 and beyond was improper (Tr. 22). The ALJ concluded, therefore, that Plaintiff was at substantial fault in causing the overpayment (Tr. 22).

The ALJ considered a second report of contact dated December 30, 1996, in which Plaintiff suspected that he may be being overpaid due to the job that he started in 1995 (Tr. 130). The ALJ noted that Plaintiff was correct that he

15

was being overpaid, but that he continued to cash his benefit checks and failed to return them despite his obvious knowledge that he was not entitled to them (Tr. 23).

Finally, the ALJ noted that on January 14, 1997, the Agency issued a Notice of Disability Cessation informing Plaintiff that it planned to stop his benefits because his work was substantial gainful activity (Tr. 132-33). Plaintiff visited the district office on January 15, 1997, and Agency personnel explained to him the implications of returning to substantial gainful activity in 1996 after the end of the extended period of eligibility (Tr. 134). The ALJ found that Plaintiff should have known that checks sent to him after his receipt of the January 14, 1997 Cessation Notice were not due him and should be returned. However, Plaintiff continued to receive checks through September 1998 and failed to return any of them. The ALJ determined, therefore, that Plaintiff was considered to be at fault in causing the overpayment.

Plaintiff contends that he is not at fault in causing the overpayment of benefits because he has a mental disability and, as a result, was unable to successfully navigate the administrative process (Pl.'s Br. at 6). The ALJ, however, carefully considered whether Plaintiff's mental condition may have affected his ability to understand the consequences of his return to work in September 1995 and determined that it did not prevent him from knowing that the payments he received

16

beginning in 1996 were not due him and should have been
returned (Tr. 23)

In evaluating Plaintiff's mental ability to understand
the consequences of working while receiving benefits, the ALJ
considered Plaintiff's hearing testimony that he was aware of
the reporting requirements and had promptly reported his
earnings (Tr. 45-50); the absence of objective evidence
demonstrating that his mental condition prevented him from
understanding that the checks he received from 1996 through
September 1998 were not due him; his work history for the same
employer; his ability to maintain a residence and meet
financial responsibilities such as paying bills; his ability
to report his monthly household expenses (Tr. 103); and his
admission that he had been overpaid in the past and had
returned a check to which he had not been entitled (Tr. 47).

The ALJ determined that based on Plaintiff's past
experience, it was reasonable to conclude that he knew the
appropriate action to take, as well as the significance of,
accepting payments to which he was not entitled (Tr. 23).  He
also determined that Plaintiff's ability to list his monthly
household expenses on his request for waiver form dated
December 29, 1998, and his successful work history for the
School District of Philadelphia, demonstrated his cognizance
of his financial matters and his reporting responsibilities
(Tr. 23).  Based on all of these considerations, the ALJ
reasonably concluded that Plaintiff's mental impairment did

17

not prevent him from knowing that the payments he received
beginning in 1996 were not due him and should have been
returned to the Agency.

Plaintiff contends that he should not be held responsible
for the Agency's administrative errors (Pl.'s Br. at 6).  The
Agency, however, does not hold Plaintiff responsible for its
actions in continuing to issue payments during those periods
when his earnings amounted to substantial gainful activity.
Rather, Plaintiff is responsible for accepting payments which,
based on his past experience and his mental capacity, he
either knew or could have been expected to know were
incorrect.  See 20 C.F.R. § 404.507(c).  In other words,
notwithstanding the Agency's error, it was Plaintiff's
responsibility to return benefit payments to which he was not
entitled because his earnings exceeded the permissible monthly
earnings limit.

Plaintiff also contends that it is unreasonable to expect
him to second-guess the Agency's complex administrative
processes (Pl.'s Br. at 6).  At issue, however, is whether he
knew or could have been expected to know that the acceptance
of disability payments during a time period when he was
working at the level of substantial gainful activity was
improper.  As indicated above, the ALJ found that it was
reasonable to expect an experienced claimant such as Plaintiff
to know that returning to work at the level of substantial

18

gainful activity would preclude acceptance of disability benefits.

Plaintiff argues that recovery of the overpayment would defeat the purpose of title II and be against equity and good conscience (Pl.'s Br. at 7-9). Specifically, he contends, first, that requiring repayment would deprive him of the necessities of life. The ALJ did not determine whether a recovery of the overpayment would defeat the purpose of title II because, as indicated above, the Commissioner need not make such a determination if she finds that a claimant is at fault. Here, the ALJ specifically found that because Plaintiff was at fault, there was no need to determine whether recovery of the overpayment would defeat the purpose of title II by depriving Plaintiff of income required for ordinary and necessary needs and living expenses (Tr. 23-24).

Even if the ALJ had found that Plaintiff was without fault, the evidence does not support a finding that recovery of the overpayment would defeat the purpose of title II. The regulations provide that in order to defeat the purpose of title II, the recovery must deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. See 20 C.F.R. § 404.508 (2002). Here, Plaintiff's consistent work history with the School District

of Philadelphia and his ability to earn at a level that is considered substantial gainful activity suggests that he has income that is sufficient for more than ordinary and necessary needs.  Nor does the evidence support Plaintiff's contention that recovery of the overpayment would be inequitable and violate good conscience because he has relied on such payments by attending vocational classes (Pl.'s Br. at 8).  The regulations defining when recovery of an overpayment would be against equity and good conscience contemplate changing one's position in reliance on such payment to a degree greater than that resulting from attending vocational classes.  See 20 C.F.R. § 404.509(a)(1) (2002).  Therefore, even if the ALJ had reached this issue, the evidence does not show that recovery of the overpayment would defeat the purpose of title II or be against equity and good conscience.

CONCLUSION

For the foregoing reasons, the Commissioner respectfully submits that substantial evidence supports her decision denying Plaintiff's request for waiver of recovery of overpayment. Therefore, the Commissioner requests that this Court grant her motion for summary judgment.

Respectfully submitted,

PATRICK L. MEEHAN
UNITED STATES ATTORNEY

JOAN K. GARNER
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF CIVIL DIVISION


By: _____
    EDA GIUSTI
    SPECIAL ASSISTANT UNITED
      STATES ATTORNEY

OF COUNSEL:

James A. Winn
  Regional Chief Counsel, Region III
Anne von Scheven
  Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
P.O. Box 41777

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July , 2003, I forwarded by mail a true copy of the foregoing brief to: Faye Riva Cohen, Esquire, 2047 Locust Street, Philadelphia, Pennsylvania  19103, counsel for Plaintiff.


_____
EDA L. GIUSTI
SPECIAL ASSISTANT UNITED
 STATES ATTORNEY
(215) 597-2717
(215) 597-4662 Fax No.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
SERAIAH BEN-YISRAEL,           )
                               )
                Plaintiff,     )
                               )
         v.                    )    CIVIL ACTION NO. 02-CV-4059
                               )
JO ANNE B. BARNHART,           )
Commissioner of                )
Social Security,               )
                               )
                Defendant.     )
```

<u>ORDER</u>

**AND NOW**, this    day of              , 2003, upon

consideration of Defendant's Motion for Summary Judgment and

Brief in Support thereof, it is hereby ORDERED that Summary

Judgment be and is entered in favor of the Defendant,

Commissioner of Social Security, and against Plaintiff,

Seraiah Ben-Yisrael.

BY THE COURT:

_____
                              J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
SERAIAH BEN-YISRAEL,            )
                               )
          Plaintiff,           )
                               )
     v.                        )    CIVIL ACTION NO. 02-CV-4059
                               )
JO ANNE B. BARNHART,           )
Commissioner of                )
Social Security,               )
                               )
          Defendant.           )
```

<u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Jo Anne B. Barnhart, through her counsel, hereby moves this Court for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, for the reasons set forth in the accompanying Brief.

Respectfully submitted,

PATRICK L. MEEHAN
UNITED STATES ATTORNEY

JOAN K. GARNER
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF, CIVIL DIVISION


By: _____
      EDA L. GIUSTI
      SPECIAL ASSISTANT UNITED
        STATES ATTORNEY


OF COUNSEL:

James A. Winn
  Regional Chief Counsel, Region III
Anne von Scheven
  Assistant Regional Counsel
Social Security Administration
The Office of the Regional Chief Counsel
Office of the General Counsel
P.O. Box 41777
Philadelphia, Pennsylvania  19101